UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:21-cr-00246 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) ) | |
| ANTHONY ANDERSON, | ) ) | |
| and | ) ) | |
| EBEN D. ANDERSON, SR., | ) ) | |
| Defendants. | ) ) ) | |

## OPINION AND ORDER

Defendant Eben Anderson moves to suppress all evidence seized during and deriving from the search of his home on February 3, 2021. Defendant Anthony Anderson moves to suppress all evidence obtained from the search of two cell phones seized from his person when he was arrested following the search of his brother's residence. Both Defendants allege that the affidavits supporting the search warrants lack probable cause. The United States opposes both motions. The Court heard oral arguments on the motions on October 13, 2021 and took the motions under advisement.

For the reasons that follow, the Court **DENIES** Defendant Eben Anderson's motion to suppress. With respect to Defendant Anthony Anderson, the affidavit supporting the warrant lacks probable cause justifying the search because there is no nexus between the phones and any suspected criminal conduct. Whether the good-

1

faith exception to the requirement for probable cause applies presents a close and difficult question on the facts and circumstances of this case. Indeed, the question could scarcely be closer. Under that exception, a search requires only a minimally sufficient nexus between the items to be searched and the alleged criminal conduct. On the facts and circumstances of this case, the Court determines that there is such a nexus, if barely. Therefore, the Court **DENIES** Defendant Anthony Anderson's motion to suppress. Finally, because Defendants make only legal arguments and not factual arguments, the Court also declines to hold evidentiary hearings on the motions.

## STATEMENT OF FACTS

On January 14, 2021, a package with a manifest describing its contents as an "Iron Ring" arrived from China at a private third-party shipping hub in Memphis, Tennessee. (ECF No. 25-1, ¶ 13, PageID #152.) On inspection, federal customs officers discovered the package contained two pill press die sets in the shape of a skull and a clown. (*Id.*, ¶¶ 13, 17, PageID #152–53.) The officers seized the package for having a fraudulent manifest and turned it over to Homeland Security Investigations. (*Id.*, ¶¶ 13, 14, PageID #152–53.) Federal agents investigated the package's named recipient, "Dondada God," but were unable to associate the name with the address to which the package was addressed or make any associations with that address. (*Id.*, ¶ 16, PageID #153.)

### A. Search Warrant for the Residence of Eben Anderson

On February 3, 2021, Homeland Security Investigations Task Force Officer Matthew Saurer—a deportation officer assigned to narcotics investigations since July

2020—applied for a search warrant for the Cleveland residence to which the package was addressed. (*Id.*, PageID #145; ECF No. 25-4, ¶ 2, PageID #167.) In the supporting affidavit, Officer Saurer stated that federal law prohibits the importation of pill press die sets because "they are considered to be Drug-Related Paraphernalia." (ECF No. 25-1, ¶ 13, PageID #152.) Law enforcement had previously seized narcotics (MDMA and fentanyl) in pill form in the shape of skulls and clowns. (*Id.*, ¶ 17, PageID #153.) Further, in Officer Saurer's experience, individuals using the mail for transporting drug paraphernalia often use fictitious names on parcels to conceal their identities. (*Id.*, ¶ 18, PageID #153–54.) Based on his training and experience, Officer Saurer stated that the pill press die sets in the package would likely be used for drug manufacturing. (*Id.*, ¶ 17, PageID #153.) Based on this affidavit, a Magistrate Judge of this Court approved an anticipatory search warrant for the residence. (*Id.*, PageID #146.) The Magistrate Judge authorized the search on the condition precedent that the package be taken into the residence and opened. (*Id.*, ¶ 12, PageID #151.)

### B. Execution of the Search Warrant

On the same day, Homeland Security Investigations conducted a controlled delivery of the seized package. (ECF No. 26-1, ¶ 10, PageID #197.) Prior to delivery, agents placed an electronic device inside the package to monitor its location and send a signal when opened. (*Id.*) About five minutes after a woman at the residence accepted the package, Defendant Anthony Anderson arrived and entered the residence. (*Id.*, ¶¶ 10, 11, PageID #197.) About five minutes later, the electronic device alerted law enforcement agents that the package had been opened. (*Id.*, ¶ 12,

PageID #197.) At this point, agents executed the search warrant. (*Id.*, ¶ 13, PageID #198.)

Upon entry, agents immediately encountered Defendant Eben Anderson and the woman who had accepted the package. (*Id.*, ¶ 13, PageID #198.) Agents apprehended Defendant Anthony Anderson attempting to flee out of a back door. (*Id.*) Inside the residence, agents found narcotics, including cocaine, fentanyl, and crystal methamphetamine; equipment for drug distribution; bundles of United States currency; eight cell phones; and five firearms. (*Id.*, ¶¶ 15–17, 19, PageID #198–99; ECF No. 25-4, ¶¶ 15–17, PageID #172.) A search of Defendant Anthony Anderson's person yielded two additional cell phones. (ECF No. 26-1, ¶ 14, PageID #198.) Agents also found seven "quick count" bundles of bulk United States currency in mixed denominations on Defendant Anthony Anderson and two similar bundles on Defendant Eben Anderson. (*Id.*)

Eban and Anthony Anderson identified themselves as brothers. (*Id.*, ¶ 18, PageID #199.) Defendant Anthony Anderson provided identification showing that he did not live at the residence searched. (*Id.*)

  C. **Warrant to Search the Phones of Anthony Anderson**

On February 9, 2021, Officer Saurer applied for a search warrant for the two phones found on Defendant Anthony Anderson on February 3, 2021. In the supporting affidavit, Officer Saurer explained that, in his training and experience, individuals involved in drug trafficking often use cell phones to maintain contact with drug associates, sources of supply, and customers; to take "trophy" pictures of drugs, money, and guns; and to communicate via voice calls, text messages, email, and other

4

electronic messaging to facilitate drug distribution. (*Id.*, ¶ 4, PageID #195–96.) Further, drug traffickers typically use multiple cell phones to compartmentalize communications. (*Id.*, ¶ 4, PageID #196.) Officer Saurer attested to the facts described above: the package's seizure for fraudulent manifest; the controlled delivery of the package to the residence; Defendant Anthony Anderson's arrival at the residence; the execution of the search warrant; Defendant Anthony Anderson's attempted flight; and the discovery of drugs, equipment, currency, phones, and firearms at the residence. (*Id.*, ¶¶ 9–17, PageID #197–99.) Based on this affidavit, the Magistrate Judge approved a search warrant for the two cell phones. ([ECF No. 26](), PageID #183; [ECF No. 28](), PageID #228.)

## STATEMENT OF THE CASE

A grand jury returned an indictment charging both Defendants with five counts of conspiracy and possession with intent to distribute various controlled substances, including cocaine, cocaine base (crack), fentanyl, and methamphetamine. Additionally, the indictment charges that Defendant Eben Anderson, as a felon, unlawfully possessed a firearm.

Defendant Eben Anderson filed a motion to suppress evidence obtained from the search of the residence. ([ECF No. 25]().) He argues that probable cause did not support the warrant authorizing the search of the residence. ([ECF No. 25](), PageID #127–28.) Defendant Anthony Anderson filed a motion to suppress evidence obtained from the search of the cell phones. ([ECF No. 26]().) He maintains that probable cause did not support the warrant authorizing the search of the two phones found on his

5

person. (ECF No. 26, PageID #183.) The United States opposes both motions. (ECF No. 27; ECF No. 28.) In addition to arguing that probable cause supports both warrants, the United States argues that, in any event, the good faith exception applies. (ECF No. 27, PageID #207; ECF No. 28, PageID #223.)

## ANALYSIS

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion" and exists "when there is a 'fair probability' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (quotations and citations omitted).

A magistrate judge's determination of probable cause receives great deference. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The issuance of a warrant is not scrutinized after the fact under a *de novo* standard, which would be inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to warrants. *Id.* at 236 (quotation omitted). The issuing magistrate judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons

6

supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. When reviewing that determination, the court simply ensures that the magistrate judge had a substantial basis for concluding that probable cause supported the warrant. *Id.* at 238–39. The Fourth Amendment requires no more. *Id.*

I. **Probable Cause**

    I.A. **The Search Warrant for the Residence**

Based on the totality of the circumstances set forth in the affidavit, the Magistrate Judge had a substantial basis for concluding that probable cause justified issuing the warrant for a search of the residence. In his affidavit, Officer Saurer stated that federal officers seized a package with a fraudulent manifest containing pill press die sets, the importation of which federal law prohibits because they are considered drug-related paraphernalia. (ECF No. 25-1, ¶ 13, PageID #152.) The pill press die sets were in the shape of a clown and skull, which the affidavit attested matched the shape of other seized illicit substances. (*Id.*, ¶ 17, PageID #153.) The package was addressed to a fictitious name, indicative of an attempt to conceal the identities of persons involved in drug trafficking. (ECF No. 25-1. ¶ 4, PageID #149.) Further, Officer Saurer attested that if a mail parcel containing drug paraphernalia is accepted and taken into a residence, then the residence is likely a location where drugs are processed for sale. (ECF No. 25-1, ¶ 4, PageID #149.) Based on these circumstances presented in the affidavit, the Magistrate Judge issued an anticipatory warrant for the residence with the condition precedent that the package be taken inside and opened.

Defendant objects to the magistrate judge's finding of probable cause for four reasons. First, Defendant maintains that any fraudulent manifest or labeling of the package links only the package's sender to illegal activity, not its recipient. (ECF No. 25, PageID #137–38.) But the condition precedent to the search cures any validity to this objection. The warrant authorized agents to enter and search the residence only if the package were taken inside and opened because opening the package provided reasonable grounds to believe that further evidence of drug trafficking would be found at the residence. (ECF No. 25-1, PageID #152.) If the package were taken inside but not opened, the warrant authorized agents to enter the residence only to retrieve the package, which constituted evidence that goods entered the country by false statement. (*Id.*; *see also id.*, PageID #145.) Therefore, the Magistrate Judge did not issue the search warrant for the residence because he determined the package's recipient was responsible for the fraudulent manifest. Rather, the sender's use of a fraudulent manifest and label sender constituted one piece of evidence supporting the Magistrate Judge's conclusion that there were reasonable grounds to believe a search of the residence would uncover evidence of drug trafficking.

Second, Defendant argues that there was no evidence the residence or any occupant was involved in drug trafficking because the pill press die sets are lawfully sold on a prominent foreign website and have lawful uses in making candy and vitamins. (*Id.*, PageID #138; *see also id.*, PageID #129, 137.) But the finding of probable cause requires only a "fair probability—not an absolute certainty—that

evidence of the crime will be found at the location." *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008) (citing *Gates,* 462 U.S. at 238). Probable cause "does not require officers to rule out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018). Rather, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* (quoting *Gates,* 462 U.S. at 244 n.13). Here, the totality of the circumstances provided reasonable grounds to believe the pill press die set had a connection to drug trafficking, including the use of a fictitious name and the clown and skull shapes linked to fentanyl pills.

Third, Defendant argues that federal agents failed to investigate sufficiently before seeking a warrant. ([ECF No. 25](), PageID #138.) The United States responds that agents had only limited time without raising suspicion before it became necessary to conduct the controlled delivery. ([ECF No. 27](), PageID #216.) A reviewing court assesses probable cause by focusing only on the "four corners of the affidavit." *United States v. Ruffin*, 979 F.3d 528, 531–32 (6th Cir. 2020). A court must judge the affidavit "on the adequacy of what it does contain, not on what it lacks, or what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). Defendant may be correct that less intrusive means presented an opportunity for further investigation before the search of the residence. However, it is not the Court's place to direct or second guess the actions of law

9

enforcement. Nor does the Fourth Amendment require the sort of less restrictive means or progression of investigatory methods that Defendant suggests.

Finally, in his reply brief, Defendant argues that there was no probable cause because it is not illegal *per se* to import pill press die sets. (ECF No. 29.) This argument does not negate the basis for probable cause supporting the warrant. Defendant correctly points out that the relevant statute requires knowledge or intent that equipment or a product will be used to manufacture a controlled substance. *See* 21 U.S.C. § 843(a)(7). Further, the affidavit did not allege that the recipient of the package had the requisite *mens rea*. (ECF No. 29, PageID #240.) However, the Court should not engage in "line-by-line scrutiny of the warrant application's affidavit," *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008), and every fact recited need not be correct, *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Even excising Officer Saurer's statement in the affidavit that the importation of pill press die sets is prohibited, the Court determines that sufficient facts—the fraudulent manifest, the fictitious name, and the shape of the pill press die sets—support a finding of probable cause to believe that a search would uncover evidence of drug trafficking. In any event, based on the totality of the circumstances, the Magistrate Judge had probable cause to believe that the recipient of the package at the residence intended the pill press die for its intended use in the drug trade.

Finally, Defendant seeks to suppress all "derivatively resulting statements" he made and all "derivatively obtained evidence" from any of the Defendants' cell phones as "fruit of the poisonous tree." (ECF No. 25, PageID #127–28.) The "fruit of the

10

poisonous tree" doctrine bars the admissibility of evidence that law enforcement officers derivatively obtain from an unconstitutional search or seizure. *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)). However, probable cause supports the search at issue which was, therefore, lawful.

### I.B. The Search Warrant for the Cell Phones

Law enforcement generally must obtain a warrant before searching the digital contents of a cell phone seized incident to an arrest. *Riley v. California*, 573 U.S. 373, 401 (2014). A warrant to search a cell phone also requires probable cause. *Id.* at 403; *United States v. Bass*, 785 F.3d 1043, 1048–49 (6th Cir. 2015). To justify a search, the circumstances must indicate why evidence of an illegal activity will be found in a "particular place." *Gates*, 462 U.S. at 238. In other words, there must be a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). A nexus that is "too vague or generalized" cannot support a search warrant. *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016).

Defendant Anthony Anderson contends that probable cause does not support the issuance of a warrant for the search of the two phones found on his person on February 3, 2021. He argues that there is no evidence Defendant used the cell phones for illegal activity and that the affidavit fails to allege any nexus between his cell phones and the alleged drug conspiracy beyond their mere location and the generalized inference that drug traffickers often use cell phones. (ECF No. 26,

11

PageID #187–88.) In response, the United States argues that the circumstances show Anthony Anderson arrived at the residence just after the package, which was then opened a few minutes later—giving rise to an inference that Defendants coordinated their actions and used their phones to do so. Further, the United States maintains that the circumstances set forth in the affidavit allowed the Magistrate Judge to infer that Defendant Anthony Anderson used his phones in a conspiracy with his brother, involving a large quantity of drugs and a fair amount of cash as well. (ECF No. 28, PageID #235.)

Without question, the totality of circumstances contained in the affidavit permits the inference that Defendant was engaged in a drug trafficking conspiracy connected to the residence. However, the affidavit does not directly tie either of Defendant Anthony Anderson's phones to that conspiracy or provide a basis to believe that evidence of drug trafficking would be found on either phone. Such an inference is plausible, but speculative. The affidavit contains no information that Defendant used the cell phones to facilitate drug distribution or engage in any illegal conduct. Instead, the affidavit reflects only Defendant's presence in the residence while possessing two cell phones and Officer Saurer's assertion that drug traffickers frequently use multiple cell phones. (ECF No. 26-1, ¶ 20, PageID #200). This nexus is too vague and generalized to support a warrant for the search of the phones. Because the affidavit lacks a nexus between the place to be searched and the evidence sought, the Court determines that probable cause did not support the warrant for a search of the phones found on Defendant Anthony Anderson's person.

## II. Good-Faith Exception to the Exclusionary Rule

Because probable cause supports the search of Defendant Eben Anderson's residence, the Court need not determine in the alternative whether the good-faith exception to the exclusionary rule articulated in *United States v. Leon,* 468 U.S. 897 (1984), applies. Although the search warrant for Defendant Anthony Anderson's cell phones lacked probable cause, the United States argues that the agents acted in good faith by obtaining a warrant and conducting the search in reliance on it. (ECF No. 28, PageID #235.) Under this exception, the exclusionary rule will not bar the admission of evidence seized in violation of the Fourth Amendment where the officers acted in "good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir.1996). This objective inquiry limits suppression to circumstances where the benefits of deterring official conduct outweigh the heavy costs of exclusion otherwise relevant evidence. *Leon*, 468 U.S. at 907. This exception requires a court to determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (quoting *Leon*, 468 U.S. at 923 n.23).

### II.A. Bare-Bones Affidavits

Although the *Leon* Court outlined four circumstances in which an officer's reliance on a warrant would not be reasonable such that the good-faith exception does not apply, Defendant argues only the third: whether the affidavit is "so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at

13

914–23). Such a bare-bones affidavit states only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). Simply, a bare-bones affidavit asserts "only the affiant's belief that probable cause existed." *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000) (quoting *United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993)). Such an affidavit provides only a "guess that contraband or evidence of a crime would be found." *White*, 874 F.3d at 496 (quoting *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994)).

An affidavit that contains a "minimally sufficient nexus between the illegal activity and the place to be searched" is not bare-bones. *Carpenter*, 360 F.3d at 596. Where the affidavit shows "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched," the affidavit is not bare bones, and official reliance on it is reasonable. *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (citing *White*, 874 F.3d at 497); *Laughton*, 409 F.3d at 749–50. All that is necessary are facts that show a nexus and that are not "so vague as to be conclusory or meaningless." *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018) (quoting *Carpenter*, 360 F.3d at 596).

**II.B. Minimally Sufficient Nexus**

Applying this standard, the affidavit supporting the search of the cell phones is not a bare-bones affidavit. The affidavit described delivery of the package, the execution of the first search warrant at the residence, and the facts linking Defendant

14

to the drug operations uncovered as a result of the search. (ECF No. 26-1, ¶¶ 9–19, PageID #197–99.)

Officer Saurer connected Defendant's cell phones to the illegal drug operations by stating that "based on training and experience," he knows that "individuals involved in the distribution of controlled substances will often use cellular telephones" to facilitate drug distribution. (ECF No. 26-1, ¶ 4, PageID #195–96.) In some circumstances, an officer's statements based on his training and experience might support good-faith official reliance on a warrant, though they cannot substitute for an evidentiary nexus to support probable cause. *United States v. Reed*, 993 F.3d 441, 452 (6th Cir. 2021) (citing *Schultz*, 14 F.3d at 1098). This is not such a case. Officer Saurer's statements in the affidavits amount to little more than a hunch that Defendants communicated using their phones.

Nevertheless, beyond that statement, the facts and circumstances contained in the affidavit provide a minimally sufficient nexus between Defendant Anthony Anderson's two phones and the drugs and other contraband uncovered during the first search. Defendant Anthony Anderson arrived at the residence shortly after the package, suggesting that he and Defendant Eben Anderson coordinated and did so through communications over their phones. Then, the package was opened shortly after the arrival of Defendant Anthony Anderson, suggesting a connection between him and the contraband in the package. Additionally, the volume of drugs, guns, and paraphernalia found in the first search (including on Defendant Anthony Anderson's

15

person) provide some support at least that he likely communicated with his brother and others through his cell phones in a distribution operation of some sort.

Those facts do not directly connect to the phones identified in the second warrant, and it would be fairly easy (or only minimally burdensome, if at all) to develop probable cause for the two phones at issue, assuming that Defendant Eben Anderson communicated by phone with his brother. Still, the timing of Defendant Anthony Anderson's arrival and the resulting inference that the brothers coordinated his arrival and the activity linked to the package by phone clears the fairly low bar under *Leon* and its progeny. These facts in the affidavit provide some modicum of evidence, however slight (and it is difficult to imagine the evidence being more slight), between Defendant Anthony Anderson's two phones and the alleged criminal activity at issue to support applying the good-faith exception.

### II.C.  Defendant's Key Authority

To argue that the good-faith exception does not apply, Defendant relies heavily on the Sixth Circuit's recent decision in *United States v. Ward*, 967 F.3d. 550 (6th Cir. 2020) (2-1 decision). There, the police found a man who overdosed in his house with a syringe in one hand and his phone nearby. Officers obtained a warrant to search the phone, which showed text messages with someone named Joe, who turned out to be the defendant. Six months after the decedent's death, officers searched the defendant's trash and found marijuana and a plastic bag with drug residue. Also, the defendant had a history of felony drug charges. Based on this information, officers obtained a warrant to search the defendant's house. Determining that the search

lacked probable cause, a judge in the Southern District of Ohio granted the defendant's motion to suppress but did not address the good-faith exception.

On appeal, the United States did not argue that probable cause supported the warrant. Instead, the Sixth Circuit and the parties focused on the good-faith exception. The court held that the affidavit for the search warrant did not satisfy the good-faith exception because it did not provide sufficient evidence linking the suspect to drug operations. *Id*. at 556. In particular, the Sixth Circuit declined to apply the good-faith exception because the record did not support probable cause to believe that the defendant continuously dealt drugs out of his house. *Id.* at 555. There were no controlled drug purchases, no tip that the defendant sold drugs, no history of drug convictions (only charges), and no prompt action on the part of law enforcement. *Id.* Further, the trash pull did not identify items permitting an inference that a search of the house would find additional evidence of drug activity. *Id.*

In *Ward*, the panel majority and dissent debated application of the good-faith exception based on previous Sixth Circuit cases that presented varying facts and circumstances. *Compare id.* at 554–58, *with id.* at 559–62 (Griffin, J., dissenting). That debate shows that the Sixth Circuit has struggled to articulate a bright, objective line for determining when a reasonable officer might rely in good faith on the issuance of a warrant that probable cause does not otherwise support. *See also, e.g.*, *Ardd*, 911 F.3d at 351; *Brown*, 828 F.3d at 383–84 & n.2 (collecting cases). Because such determinations ultimately turn on the particular facts and circumstances, such variability should not be surprising. Whatever value there may

17

be in trying to discern consistent application or uniform principles, the Sixth Circuit has repeatedly upheld searches where officers relied in good faith on an inferred connection between evidence of drug trafficking and a suspected dealer's home, at least where the drug operations are "larger scale, continual and ongoing." *Ward*, 967 F.3d at 556; *Ardd*, 911 F.3d at 351–52 (collecting cases). Of course, *Ward* involved the search of a home, which receives strong protection under the Fourth Amendment, *see, e.g.*, *Lange v. California*, 579 U.S. 486, 141 S. Ct. 2011, 2018 (2021), and Defendant Anthony Anderson challenges the search of two phones. But the Court need not distinguish *Ward* on that basis.

Unlike *Ward*, the affidavit here provides evidence of Defendant's involvement in large scale and ongoing drug operations. It identified sizable quantities of drugs, and the phones were seized in close temporal (and geographic) proximity to the controlled substances. ([ECF No. 26-1](), ¶¶ 14, 16 & 19, PageID #198–99.) Instead, the record in this case—the inferred communications between Defendants based on the timing of Defendant Anthony Anderson's arrival at the residence and the opening of the package—provides a minimally sufficient nexus to support applying the good-faith exception. In this case, the question is quite close, and reasonable people can disagree.

Rather than wade into the differing facts of myriad cases, the Court makes this determination by returning to first principles the Supreme Court articulated in *Leon* about application of the good-faith exception. The Court sees little value in deterring the sort of official conduct at issue. Further, the deference accorded the Magistrate

Judge's determination of probable cause counsels against suppression in this particular case.

### III.  Evidentiary Hearing

"A district court is required to hold an evidentiary hearing when the defendant has set forth contested issues of fact that bear on the legality of a search." *United States v. Montgomery*, 395 F. App'x 177, 186 (6th Cir. 2010).  To justify a request for an evidentiary hearing, a defendant must set forth "sufficiently definite, specific, detailed, and non-conjectural" reasons that enable the court to conclude that contested factual issues cast doubt on a search's validity.  *United States v. Moore*, 999 F.3d 993, 999 (6th Cir. 2021) (citing *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)).

Defendant Eben Anderson requests a hearing on his motion to suppress.  (ECF No. 25, PageID #127.)  But in his motion, Defendant does not contest factual issues or identify facts that might materially change the analysis of probable cause for the warrant to search his residence.  Instead, Defendant argues that the facts before the Magistrate Judge do not suggest illegal activity.  Notwithstanding Defendant's argument, his motion raises purely legal questions about the sufficiency of the search warrant affidavit and the existence of probable cause.  Accordingly, there is no reason to have an evidentiary hearing.

In his motion, Defendant Anthony Anderson also requested a hearing (ECF No. 26, PageID #182), but represented at the hearing that there are not factual disputes requiring a hearing at this time.  Generally, a determination of good-faith

reliance, like a determination of probable cause, must be bound by the "four corners" of the affidavit. *Laughton*, 40 F.3d at 751–52. However, there is a narrow exception where the affidavit inadvertently excludes information the magistrate judge clearly knew and considered. *United States v. Frazier*, 423 F.3d 526, 534–35 (6th Cir. 2005); *see also United States v. Thomas*, 852 F. App'x 189, 198 (6th Cir. 2021). On this record, that exception does not apply. Nor is there any argument or suggestion that investigators sought or executed the warrant for pretextual reasons or otherwise took a flyer on securing a warrant to search the phones. Again, the record provides no reason for an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motions to suppress. (ECF No. 25; ECF No. 26.)

**SO ORDERED.**

Dated: October 27, 2021

　　　　　　　　　　　　　　　　　　J. Philip Calabrese
　　　　　　　　　　　　　　　　　　United States District Judge
　　　　　　　　　　　　　　　　　　Northern District of Ohio